IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EDMUNDO ESPINOZA, §
AN INDIVIDUAL, §
        PLAINTIFF, §
 §
V. §    CASE NO. 19-CV-1805-E-BK
 §
STEVEN EUGENE HUMPHRIES, §
AKA STEVEN HUMPHRIES AND §
STEVEN H. HUMPHRIES, AN §
INDIVIDUAL, §
        DEFENDANTS. §

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 23,

Plaintiff's *Request For Entry Of Default Judgment Against Defendant by Clerk*, Doc. 31,

Defendant's *Opposition To Plaintiff's Motion To Enter Default Judgment And Motion To Set

Aside Clerk's Entry Of Default Under Federal Rule Of Civil Procedure 55(c)*, Doc. 32, and

Defendant's *Motion For Leave To File Reply To Plaintiff's Response To Defendant's Motion To

Set Aside Clerk's Entry Of Default*, Doc. 34, are all before the Court.  For the reasons stated

below, Plaintiff's motion should be **GRANTED**, and Defendant's motion should be **DENIED**.

**I. BACKGROUND**[1]

Plaintiff, a Texas citizen, filed his *Civil Complaint for Damages* against Defendant in

July 2019, invoking diversity jurisdiction due to Defendant's Florida citizenship.  Doc. 1 at 1-2.

---

[1] Because the parties are well familiar with the extensive efforts Plaintiff has undertook to effectuate service of process on Defendant, *see* Doc. 27 at 1-2, this section sets out only the facts most pertinent to the resolution of the motions at bar.

Plaintiff asserts Texas state law claims for suit on sworn account and *quantum meruit* based on Defendant's alleged failure to pay him for services he rendered as Defendant's former counsel in a federal criminal matter and other proceedings.  Doc. 1 at 2-5.  Through a process server, Plaintiff repeatedly attempted to effect service on Defendant who variously claimed – apparently falsely – to have moved to live with his terminally ill mother and to be leaving the country.  Doc. 9-1 at 8-9 (K. Parker, Return of Non-Service and email to Plaintiff); Doc. 11 at 3.  Defendant also allegedly told the server, "I know that you have to serve me personally.  Good luck." Although he now denies making this remark.  Doc. 11 at 3; Doc. 32-1 at 2.  After more than 20 additional attempts at personal service between August 2019 and October 2019, Plaintiff obtained leave of court to serve Defendant via constructive service by publication.[2]  Doc. 11 at 4, 9;  Doc. 13.

Plaintiff then published a Notice of Action in the Santa Rosa Press Gazette, the newspaper for Santa Rosa County, Florida.  Doc. 15-1 at 2.  The published Notice of Action specified that Defendant had until January 6, 2020 to serve written defenses, if any, to Plaintiff's suit.  Doc. 15-1 at 2.  After the required four weekly publications of the Notice of Action and no response from Defendant, the Clerk entered a default against Defendant at Plaintiff's request on January 24, 2020.  Doc. 16 at 1.  Five days later, Defendant filed a *pro se Motion to Vacate the Clerk's Entry of Default Judgment*.  Doc. 17.

---

[2] Meanwhile, Plaintiff also (1) served Defendant with a Written Notice of a Lawsuit and Request to Waive Service of Summons via U.S. mail with a delivery confirmation dated October 18, 2019; (2) had a non-party mail copies of the summons and complaint to Defendant's home address with proof of attempted delivery on November 19, 2019; and (3) On November 22, 2019, had a process server e-mail Defendant copies of the summons and complaint to steve@automotiveonly.com, which is the email address Defendant has registered with in CM/ECF for this and earlier cases to which he was a party.  *See* Doc. 11 at 4-5.

In the motion to vacate, Defendant argued he had 20 days to respond to Plaintiff's complaint after the final publication of the Notice of Action in the newspaper — until January 28, 2020 — thus making the Clerk's entry of default four days premature.  Doc. 17 at 3.  The Court concluded that Defendant's deadline for responding to this suit was the published date of January 6, 2020; therefore, the Clerk did not prematurely enter a default.  Doc. 27 at 4.  The Court also determined that the default should not be vacated because the facts underlying Plaintiff's attempted service suggested that Defendant's conduct and resulting default were willful.  Doc. 27 at 4-5.  Finally, the Court concluded that Defendant's failure to assert any meritorious defense to the suit weighed in favor of denying his motion to set aside the default and issued findings, conclusions, and a recommendation (the "FCR") to that effect on August 19, 2020.  Doc. 27 at 5.

Absent any objection from Defendant, the district judge accepted the FCR and denied the motion to vacate on September 4, 2020.  Doc. 29.  Plaintiff moved for entry of a default judgment on October 25, 2020, and Defendant filed his opposition thereto and second motion to vacate the Clerk's default on November 14, 2020.  Doc. 21; Doc. 32.  The motions are now ripe for consideration.

## II.  APPLICABLE LAW

The conditions upon which a default may be entered against a party, as well as the procedure to seek the entry of default judgment, are found in Rule 55 of the Federal Rules of Civil Procedure.  As an initial matter, the moving party must establish that the nonmovant (1) has been served with the summons and complaint and default was entered due to their failure to appear; (2) defendant is neither a minor nor an incompetent person; (3) defendant is not in military service or otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if

defendant has appeared in the action, they were provided with notice of the application for default judgment at least three days prior to any hearing on the matter. FED. R. CIV. P. 55. The entry of a default judgment thereafter is the culmination of three events: (1) default, which occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure; (2) entry of default by the clerk of court when such default is established by affidavit or otherwise; and (3) application by plaintiff to the clerk for a default judgment after the entry of default. FED. R. CIV. P. 55(a); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

A defendant's default alone does not entitle a plaintiff to a default judgment. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). The decision to grant a default judgment is one soundly within the district court's discretion. *Id.* "Default judgments are a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "[T]hey are available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (citation omitted). Once entered, "[a] default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Put another way, '[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Id.* (quoting *Nishimatsu Constr.*, 515 F.2d at 1206).

Further, while a default judgment may conclusively establish a defendant's liability, it does not establish the quantity of damages. *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019) (citation omitted), *as revised* (June 6, 2019). The court may conduct a hearing to

determine the amount of damages to which a plaintiff is entitled. FED. R. CIV. P. 55(b)(2). A court also may determine damages without convening an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (citation and internal quotation marks omitted). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993). Thus, where a plaintiff submits an affidavit and supporting documents demonstrating that the debt owed was in an amount certain, the entry of a default judgment in that amount without evidentiary hearing is permissible. *Leedo Cabinetry*, 157 F.3d at 414.

### III. PARTIES' ARGUMENTS

Plaintiff asserts that he is entitled to the entry of a default judgment against Defendant because the Clerk properly entered a default and he can establish damages, including prejudgment interest and costs, via simple mathematical computations as detailed in his supporting affidavit. Doc. 31 at 4-6. Specifically, Plaintiff requests that the Court enter a judgment for (1) $128,400.00 for his suit on sworn account; (2) $6250.00 on his *quantum meruit* claim; and (3) costs totaling $665.72. Doc. 31 at 6.

Defendant, now represented by counsel, does not directly respond to the merits of Plaintiff's current motion. Instead, Defendant requests for the second time that the Court set aside the Clerk's entry of default, reiterating some of his prior arguments and raising some new ones. *See* Doc. 32 *passim* (arguing that (1) the answer date provided in Plaintiff's published notice was premature, (2) the notice was published in the wrong county, (3) the notice did not

5

include Plaintiff's *quantum meruit* claim, and (4) a variety of "good cause" factors favor setting aside the default)).

## IV. ANALYSIS

### A. Defendant's Motion to Vacate the Default

Because Defendant's "response" to Plaintiff's motion entry of a default judgment essentially seeks reconsideration of the Court's prior order denying his *pro se* motion requesting the same relief, the Court considers that request first. Rule 54(b) of the Federal Rules of Civil Procedure allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citation omitted). This reflects the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). Even so, Rule 54(b) motions "are not the proper vehicle for rehashing evidence, legal theories, or arguments." *Ocwen Loan Servicing, LLC v. Heiberg*, No. 4:17-CV-00690-ALM-CAN, 2020 WL 957640, at *2 (E.D. Tex. Feb. 4, 2020) (collecting cases). Thus, to the extent Defendant is rehashing the arguments he raised in his prior motion to vacate the default, the Court declines to consider them.

That leaves Defendant's new arguments, namely that the published notice was defective because it did not include Plaintiff's *quantum meruit* claim and that he has now demonstrated good cause to set aside the default. Dispensing with the first argument quickly, the Court readily concludes that the failure of the newspaper publication to mention Plaintiff's *quantum meruit* claim was a *de minimus* error. Section 49.08 of the Florida Code of Civil Remedies and

Procedure provides that a Notice of Action must contain, *inter alia*, "the nature of the action or proceeding in short and simple terms *(but neglect to do so is NOT jurisdictional)*" (italics added). The published notice in this case advertised the chief cause of action as the suit on sworn account, which is accurate given the size of that claim's alleged amount of damages versus those for the *quantum meruit* claim – approximately $128,000 versus $6,000. The statute does not require that the published notice list every cause of action brought in a suit.

Turning to the next inquiry, Rule 55(c) allows the court to set aside an entry of default for "good cause." *Lacy v Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000). In determining whether there is good cause, the court must consider "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992) (citation omitted). These factors are "disjunctive" and "not exclusive," leaving courts free to consider other factors. *Id.* at 184. However, "[a] finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding." *Lacy*, 227 F.3d at 292 (citation and internal quotation marks omitted). The Court will thus address the willfulness of Defendant's conduct first.

To that end, a number of observations are in order. First, although Defendant avers he retained counsel on August 21, 2020 to file the instant motion, he offers no explanation for failing to object or otherwise respond to the then-pending FCR recommending that his first motion to vacate the default be denied. *See* Doc. 32-1 at 3 (Deft. Affidavit). Defendant also claims that he did not receive the order accepting the FCR. *See* Doc. 32-1 at 3 (Deft. Affidavit). Yet, Court records reflect that the order was electronically sent to the email address Defendant provided to the Court and has used when filing his own pleadings. Moreover, Defendant did not

file the instant motion until more than two months after the district judge accepted the FCR denying his first motion to vacate the default. Doc. 29; Doc. 32. Defendant's failure to object to the FCR in particular weighs against the equities in determining whether his motion should be granted. *See, e.g.*, *Smallwood v. Willow Way, LLC*, 3:17-CV-242-G-BN, 2017 WL 6767372, at *6 (N.D. Tex. Dec. 7, 2017), *adopted by* 2018 WL 259517 (N.D. Tex. Jan. 2, 2018) (citation omitted) (holding that in the absence of objections and after accepting magistrate's report, the district judge can conduct a plain error review of the magistrate's recommendation when a party moves for reconsideration). Overall, Defendant's actions suggest he has chosen to "play a game" with the Court. *In re Dierschke*, 975 F.2d at 184.

*In re Dierschke* is instructive on this point. There, the party in default argued that his failure to answer was unintentional, explaining that "he was involved in a second suit when served and, as a result, he did not understand that he had been served with a summons in this case." 975 F.2d at 184. The Court of Appeals for the Fifth Circuit affirmed the district court's finding that the conduct was willful because the defaulting party "chose to make a decision that he hadn't been served when, in fact, he had," leading the judge to conclude that he "chose to play games with [the] court." *Id.* at 183-84.

A different result was reached in *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114 (5th Cir. 2008). There, the court remanded upon finding the record did not conclusively show the default was willful where the party in question engaged in regular correspondence with the person who later sued her concerning the property in dispute and stated her intent to claim ownership of the property. *Jenkens*, 542 F.3d at 122-23. The Court held that "perfection of service is not determinative — the defendant's knowledge of the perfected service, and the defendant's actions post-service also play a role in measuring the willfulness of a defendant's

default." *Id.* at 122; *see also Lacy*, 227 F.3d at 292-93 (finding that default was not willful where defendant mistakenly assumed it was not served, but maintained contact with plaintiff concerning matter of litigation).

In light of Defendant's actions in this case, the Court concludes that his conduct was willful. *Dierschke*, 975 F.2d at 184. Because the Court finds Defendant's failure to file timely, responsive pleadings intentional, there need be no other finding. *Id.* Accordingly, the Court should decline to exercise its inherent power to reverse its prior order denying Defendant's motion to vacate the default. *Austin*, 864 F.3d at 336.

## B. Motion for Default Judgment

While Defendant partly styled his pleading as an "Opposition to Plaintiff's Motion to Enter Default Judgment," he did not address the merits of Plaintiff's motion. He has therefore waived any arguments he may have had in that regard. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (noting that waiver is the intentional relinquishment of a known right). Nevertheless, by defaulting, Defendant does not admit facts that are not well-pleaded, nor does he admit any conclusions of law. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. The Court will thus assess Plaintiff's factual allegations and causes of action *infra*.

### 1. Suit on Sworn Account

The elements of a suit on sworn account are: (1) the sale and delivery of merchandise or performance of services; (2) the amount of the account is "just" insofar as the prices are charged pursuant to an express agreement or, absent an agreement, that the charges are usual, customary, or reasonable; and (3) that the outstanding amounts remain unpaid. *PennWell Corp. v. Ken Associates, Inc.*, 123 S.W.3d 756, 766 (Tex. App.—Houston [14th Dist.] 2003). The plaintiff must file their petition under oath. TEX. R. CIV. P. 185.

Plaintiff alleges in his verified complaint and accompanying affidavit that (1) Defendant hired Plaintiff to provide him with legal services initially for a criminal matter and then on a continuing basis in numerous other matters from December 2011 to April 2016; (2) Plaintiff's hourly rate of $300.00 is just because he has been practicing law for 40 years, and the rate is usual, customary, and reasonable in the Texas legal community; and (3) Defendant has refused to pay for Plaintiff's services in the amount of $107,000.00, which consists of 357 hours of work at Plaintiff's stated hourly rate.[3] *Doc. 1 at 2-3*, 5; *Doc. 1-1 at 1-33*.  This is sufficient to satisfy the elements required in a suit on sworn account.  *PennWell Corp.*, 123 S.W.3d at 766.  Accordingly, default judgment should be entered in Plaintiff's favor on this claim.

### 2.  *Quantum Meruit*

Plaintiff's claim for *quantum meruit* stems from a $5,000.00 loan he gave Defendant for living expenses.  Plaintiff asserts that Defendant had reasonable notice that Plaintiff expected the money to be repaid and it was not a gift.  *Doc. 1 at 5*.

*Quantum meruit* is an equitable remedy that is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).  The elements of a suit based on *quantum meruit* are: (1) valuable services were rendered or materials were furnished; (2) to the person sought to be charged; (3) the services and materials were accepted by said person and used by him; and (4) the person was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid.  *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732-33 (Tex. 2018) (citation omitted).  Put simply, "[r]ecovery in *quantum meruit* will be had when

---

[3] Plaintiff's affidavit details the various cases he worked on, the tasks he performed on Defendant's behalf, and the time he spent thereon.

nonpayment for the services rendered or materials furnished would result in an unjust enrichment to the party benefitted by the work." *Id*. at 741. However, as should be plain from the cited language, however, simply lending money to another individual is not a "valuable service" or "materials furnished" for *quantum meruit* purposes. *Lilani v. Noorali*, CIV.A. H-09-2617, 2011 WL 13667, at *12 (S.D. Tex. Jan. 3, 2011) (citing *Cristobal v. Allen*, No. 01-09-00126-CV, 2010 WL 2873502, at *6 (Tex. App.—Houston [1st Dist.] July 22, 2010)). Accordingly, Plaintiff is not entitled to a default judgment on his claim for *quantum meruit*.

## C. Damages, Interest, and Costs

### 1. Damages

As previously noted, unliquidated damages normally are not awarded without an evidentiary hearing in the context of a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citation omitted). Nevertheless, a hearing is not required if the claimed damages are a liquidated sum or one capable of mathematical calculation. *Id.*; *see also* FED. R. CIV. P. 55(b)(2) ("The court may conduct hearings . . . when to effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter"). The rule thus affords the district court significant latitude. *James*, 6 F.3d at 310. Notably, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

Plaintiff seeks to recover attorney's fees due from Defendant for 357 hours of work he performed, as verified in his detailed affidavit, at Plaintiff's stated hourly rate of $300. Doc. 1-1 at 1-33. The Texas Supreme Court has set out eight factors in determining a reasonable fee award:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Upon careful consideration of the *Arthur Andersen* factors, the Court accepts Plaintiff's representations that (1) the fee requested is reasonable given Plaintiff's description of the time he spent on Defendant's copious legal matters, and (2) his hourly rate of $300.00 is reasonable and customary in the relevant community in light of his many years in the legal profession. The Court thus finds that Plaintiff is entitled to a default judgment in the amount of $107,000.00.

   *2. Interest*

Prejudgment interest is calculated under state law in diversity cases. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). It is compensation allowed by law as "additional damages for lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (citation omitted), *superseded by statute on other grounds*, TEX. FIN. CODE § 304.1045. In Texas, prevailing parties receive prejudgment

interest as a matter of course. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994).

There are two separate bases for the award of prejudgment interest — an enabling statute or general principles of equity. *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002) (quoting *Johnson & Higgins of Texas, Inc.*, 962 S.W.2d at 528). "[S]tatutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases." *Id.* (citations omitted). Because Plaintiff's claims do not fall within the statutory provisions, prejudgment interest is governed by Texas common law.

"Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest." *Id.* The Texas Finance Code provides that the postjudgment interest rate is "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]" TEX. FIN. CODE § 304.003(c)(2). The current prime rate is 3.25 percent. https://www.federalreserve.gov/releases/H15/ (last visited May 19, 2021). Accordingly, the five percent prejudgment interest rate applies. Prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date a defendant received written notice of a claim, or (2) the date suit is filed. *Johnson & Higgins of Texas, Inc.*, 962 S.W.2d at 532-33. Plaintiff is thus entitled to recover prejudgment interest at the rate of five percent, which will be calculated from the date suit was filed on July 29, 2019.

Regarding postjudgment interest, federal law applies on "any judgment in a civil case recovered in a district court . . . including actions based on diversity of citizenship." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) (cleaned up). A court awards postjudgment interest pursuant to 28 U.S.C. § 1961. Accordingly, postjudgment interest

on Plaintiff's total award shall accrue at the applicable federal rate, which is currently .05 percent.  http://www.txnd.uscourts.gov/ (last visited May 19, 2021); *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991) ("direct[ing] the district court to award post-judgment interest on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees").

   *3. Costs*

   Finally, Plaintiff requests costs for the court filing fee of $400.00 and the $265.72 cost associated with serving Defendant by publication.  Doc. 31 at 6.  "Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party."  FED. R. CIV. P. 54(c)(1).

   The governing statute clearly permits taxing costs against a defendant for court filing fees.  *See* 28 U.S.C. § 1920.  However, the Court has been unable to locate any authority in this Circuit that addresses whether fees associated with service by publication are recoverable.  Indeed, there is scant authority on the question at all.  Nevertheless, given that all the authority the undersigned could locate provides for the taxation of such costs, the Court recommends the same in this case.  *See Samana, Inc. v. Lucena*, No. 17-24677-CV, 2019 WL 11623927, at *4 (S.D. Fla. Sept. 16, 2019) (taxing costs for substitute service fees); *JPMorgan Chase Bank, N.A. v. Sun State Capital Prop., LLC*, No. 6:17-CV-110-Orl-22DCI, 2018 WL 4760818, at *3 (M.D. Fla. Sept. 10, 2018) (same) (adopted by subsequent order docketed Sept. 26, 2018); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08-CV-00481-AWI-SMS, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) (allowing costs for service by publication).  Accordingly, Plaintiff's request for an award of costs in the total amount of $665.72 should be granted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Request For Entry Of Default Judgment Against Defendant by Clerk*, Doc. 31, should be **GRANTED** as set forth above, and Defendant's *Motion To Set Aside Clerk's Entry Of Default Under Federal Rule Of Civil Procedure 55(c)*, Doc. 32, should be **DENIED**.

**SO RECOMMENDED** on May 21, 2021.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).